Holli DRAKE, By her Next Friend and Parents Doris and Donald DRAKE and Doris and Donald Drake, Individually, Plaintiffs–Appellants,

v.

MITCHELL COMMUNITY SCHOOLS, Mitchell Community Schools Board of Trustees, Kiwanis International, Inc., Mitchell Chapter and its Board of Directors, and First National Bank of Mitchell, Defendants–Appellees.

No. 47S01–9505–CV–534.

Supreme Court of Indiana.

May 10, 1995.

Jay D. Allen, Allen, Allen & Allen, Salem, for appellants.

Robert J. Doyle, Stewart Due Miller & Pugh, Indianapolis, for appellee Mitchell Community Schools, Mitchell Community Schools Bd. of Trustees.

Mark R. Smith, Smith & Bemenderfer, Indianapolis, for appellee First Nat. Bank of Mitchell.

DICKSON, Justice.

In this personal injury action brought by a high school student and her parents after the student allegedly contracted histoplasmosis [1] from the various defendants' use and control of a vacant grain elevator, the Court of Appeals reversed a summary judgment favoring the school and affirmed a summary judgment favoring the bank that owned the elevator. *Drake v. Mitchell Community Sch.* (1994), Ind.App., 628 N.E.2d 1231. The plaintiff-appellants seek transfer to question the interpretation and application given the Indiana Recreational Use Statute ("IRUS"), Indiana Code § 14–2–6–3. We grant transfer.

In 1981, the First National Bank of Mitchell ("the Bank") acquired ownership of a grain elevator located in downtown Mitchell, Indiana. Annually thereafter, the Bank donated the use of the elevator to the Mitchell Chapter of Kiwanis International, Inc. ("Kiwanis"), which conducted a Halloween fund-raising event, a haunted house, in the structure. In 1990, Kiwanis again obtained use of the elevator and approached the Student Council of Mitchell High School about co-sponsoring the Halloween event. The Student Council agreed to participate, with proceeds to be divided equally between the two organizations.

Cassandra Wheatley, a teacher at the high school and faculty sponsor of the Student Council, made an initial inspection of the elevator, observed its dirty condition, and requested that it be cleaned to avoid, among other things, the risk of histoplasmosis, a disease she herself had previously contracted. Kiwanis indicated that the elevator would be cleaned before students entered to decorate. Several days prior to the staging of the haunted house, before Kiwanis undertook cleaning, plaintiff-appellant Holli Drake, a Student Council member who had volunteered to make decorations, obtained a key from the Bank to enter the elevator. Holli fashioned decorations in the elevator, in windy, dusty conditions, for two to three hours, during which a Kiwanis member arrived and began vacuuming. Holli assisted in the cleaning by sweeping the ramp to the elevator on the same occasion. The elevator was still quite dusty on the evening of the haunted house, in which Holli participated by leaping out of a plastic coffin in an effort to frighten patrons. Several days after the event, Holli contracted a severe case of histoplasmosis, which required hospitalization and resulted in substantial medical bills and other treatment-related expenses.

Holli and her parents brought suit, alleging negligence on the parts of Kiwanis, the Bank, and Mitchell Community Schools and its Board of Trustees (together, "the School"). Each of the defendants filed a motion for summary judgment. The trial court granted summary judgment in favor of the School under the governmental immunity provisions of the Indiana Tort Claims Act, Ind.Code § 34–4–16.5–3(11), and in favor of the Bank under the IRUS immunity provi-

---

1. An infectious disease, similar in clinical features to tuberculosis, normally acquired by inhalation of dust containing spores of a particular fungus often found in soils contaminated by the dejecta of fowl, birds, or bats. *Stedman's Medical Dictionary* 649 (Fourth Unabridged Lawyers' Edition, Illustrated, 1976).

sions. The summary judgment motion by Kiwanis was denied.

In their appeal from the trial court, the plaintiffs have contested both the summary judgment granted the School and that granted the Bank. As to the former, the decision of the Court of Appeals reversing summary judgment is summarily affirmed. Ind.Appellate Rule 11(B)(3).[2] We now proceed to consider the summary judgment favoring the Bank.

Although a summary judgment on appellate review is clothed with a presumption of validity and the appealing party bears the burden of persuasion, we consider the same issues and follow the same process as did the trial court and will uphold such judgment only if the pleadings and materials properly presented, construed in the light most favorable to the non-moving party, show the absence of a genuine issue of material fact. *See Winkler v. V.G. Reed & Sons* (1994), Ind., 638 N.E.2d 1228, 1231; *Greathouse v. Armstrong* (1993), Ind., 616 N.E.2d 364, 365–66; *Ambassador Fin. Servs., Inc. v. Indiana Nat'l Bank* (1992), Ind., 605 N.E.2d 746, 750–51, 755; *Indiana Dept. of State Revenue v. Caylor–Nickel Clinic, P.C.* (1992), Ind., 587 N.E.2d 1311, 1312–13; Ind.Trial Rule 56(C). We must provide careful scrutiny to assure that the non-prevailing party is not improperly prevented from having its day in court. *Winkler,* 638 N.E.2d at 1231; *Greathouse,* 616 N.E.2d at 365; *Ambassador,* 605 N.E.2d at 751.

The Bank's motion for summary judgment was based upon its claim of immunity from liability under IRUS, which provides:

> Any person who goes upon or through the premises including, but not as a limitation, lands, caves, waters, and private ways of another with or without permission to hunt, fish, swim, trap, camp, hike, sightsee, or for any other purposes, without the payment of monetary consideration, or with the payment of monetary consideration directly or indirectly on his behalf by an agency of the state or federal government, is not thereby entitled to any assurance that the premises are safe for such purpose. The owner of such premises does not assume responsibility for nor incur liability for any injury to person or property caused by an act or failure to act of other persons using such premises. The provisions of this section shall not be construed as affecting the existing case law of Indiana of liability of owners or possessors of premises with respect to business invitees in commercial establishments nor to invited guests nor shall this section be construed as to affect the attractive nuisance doctrine. Nothing in this section contained shall excuse the owner or occupant of premises from liability for injury to persons or property caused by the malicious or illegal acts of the owner or occupant.

Ind.Code § 14–2–6–3. The Bank contends that it is entitled to summary judgment because it established that Holli went upon or through the premises of the Bank for a recreational purpose, without the payment of monetary consideration and without being a business invitee or invited guest of the Bank, and that the plaintiffs did not allege malicious or illegal acts by the Bank.

▆ The Bank also contends that the plaintiffs' response to the Bank's summary judgment motion failed to comply with the specific designation requirements of Ind.Trial Rule 56(C). We do not reach this issue because, under Indiana procedure, a party opposing summary judgment is not required to come forward with contrary evidence until the moving party first demonstrates the absence of any genuine issue of material fact. *Jarboe v. Landmark Community Newspapers of Ind., Inc.* (1994), Ind., 644 N.E.2d 118, 123; *Oelling v. Rao* (1992), Ind., 593 N.E.2d 189, 190.

▆ We initially note that, by denying certain persons legal recourse for personal injury or property damage, IRUS is in derogation of common law and must accordingly be strictly construed against limiting a claimant's right to bring suit. *Tittle v. Mahan* (1991), Ind., 582 N.E.2d 796, 800; *Collier v. Prater* (1989), Ind., 544 N.E.2d 497, 498. Absent express declaration or unmistakable

---

**2.** We have denied the School's Petition to Transfer.

implication, statutes will not be interpreted as changing the common law. *Tittle,* 582 N.E.2d at 800.

■ The plaintiffs contend in part that IRUS does not apply to Holli because her activities at the grain elevator did not fall within the meaning of the statutory phrase "for any other purposes." The language of IRUS expressly applies to limit the claims of persons who go upon or through another's premises "to hunt, fish, swim, trap, camp, hike, sightsee, or for any other purposes." Ind.Code § 14–2–6–3. To determine the meaning to be given "for any other purposes," we apply the principle of *ejusdem generis,* which maintains that "where words of specific and limited signification in a statute are followed by general words of more comprehensive import, the general words shall be construed as embracing only such persons, places, and things as are of like kind or class to those designated by the specific words, unless a contrary intention is clearly shown by the statute." *Thompson v. Thompson* (1972), 259 Ind. 266, 275–76, 286 N.E.2d 657, 662–63. *Accord Black's Law Dictionary* 464 (5th ed. 1979).

■ Pursuant to this rule of statutory interpretation, the phrase "for any other purposes" includes only those activities consistent with the general class of behavior typified by hunting, fishing, swimming, trapping, camping, hiking, and sightseeing. The Bank's own designated material supporting its summary judgment motion indicates that the purposes of Holli's presence in the grain elevator were solely to decorate for and perform at the haunted house event. These activities are not of the same general kind or class as hunting, fishing, camping, hiking, and sightseeing. We conclude that the Bank has failed to establish that the plaintiffs' claims are subject to the IRUS "for any other purposes" provision.

■ Moreover, IRUS expressly declares that its provisions do not affect Indiana common law with respect to "business invitees in commercial establishments *nor to invited*

*guests.*" Ind.Code § 14–2–6–3 (emphasis added). In *Burrell v. Meads* (1991), Ind., 569 N.E.2d 637, 642–43, this Court recognized that a landowner's duty to exercise reasonable care in accordance with Section 343 of the Restatement (Second) of Torts extends to three types of invitees: business visitors, public invitees,[3] and social guests. The facts asserted by the Bank do not exclude the possibility that Holli was an invitee and therefore not subject to IRUS.

■ In addition, the Bank has not established that the circumstances of this case bring it within the IRUS provision that the owner of the premises "does not assume responsibility for nor incur liability for any injury ... caused by an act or failure to act *of other persons* using such premises." Ind. Code § 14–2–6–3 (emphasis added). This IRUS limitation expressly applies only with respect to the conduct of others and does not create an immunity as to the premises owner's own actions or failure to act. As of the present stage of litigation in the trial court, the plaintiffs do not necessarily seek to impose liability on the Bank solely for the acts of other persons. Rather, the amended complaint generally alleges that the Bank breached its duty of reasonable care toward the plaintiffs. Record at 69–70.

The Bank has failed to demonstrate the absence of a genuine issue of material fact as to its claims of protection based upon the Indiana Recreational Use Statute. However, we do not hold or even consider whether the Bank owed any common law duty to persons such as Holli Drake who were participating in the Halloween event at the grain elevator.

Summary judgment in favor of the Bank is reversed, and this cause is remanded to the trial court for proceedings not inconsistent with this opinion.

SHEPARD, C.J., and DeBRULER, SULLIVAN, and SELBY, JJ., concur.

---

**3.** "A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held

open to the public." Restatement (Second) of Torts § 332(2) (1965).