M–PLAN, INC., Advantage Health Plan, Inc., and Partners National Health Plans of Indiana, Inc., Appellants (Plaintiffs below),

v.

INDIANA COMPREHENSIVE HEALTH INSURANCE ASSOCIATION and Sally McCarty, In Her Official Capacity as Indiana insurance Commissioner, Appellees (Defendants below).

No. 49S02–0312–CV–605.

Supreme Court of Indiana.

June 8, 2004.

David J. Bodle, Robert L. Hartley, Indianapolis, IN, John A. Biek, Melissa A. Connell, Chicago, IL, Attorneys for Appellants.

Arend J. Abel, Indianapolis, IN, Attorney for Amicus Curiae Physicians' Health Plan of Northern Indiana, Inc.

Wayne C. Turner, Anne L. Cowgur, Michael R. Limrick, Indianapolis, IN, Attorneys for Appellees.

Robert M. Baker III, Indianapolis, IN, Attorney for Amicus Curiae Indiana High School Athletic Association, Inc.

ON PETITION FOR TRANSFER FROM THE INDIANA COURT OF APPEALS, NO. 49A02–209–CV–759.

BOEHM, Justice.

The Plan of Operation of the Indiana Comprehensive Health Insurance Association requires any challenge to the Association's assessment of its members to be presented to the Association's Board, subject to a right of appeal to the Commissioner of Insurance. We hold that these remedies are required to be pursued before a member may challenge an assessment in court.

**Factual and Procedural Background**

The Indiana Comprehensive Health Insurance Association (ICHIA) was created by statute in 1981. Its purpose is to provide health insurance for those who may not otherwise be able to obtain coverage. Ind.Code § 27–8–10–2.1(a) (2003). Every health insurer, health maintenance organization (HMO), limited service HMO, and self-insurer of health care coverage is required to be a member. *Id.* Individuals eligible for coverage through ICHIA are Indiana residents who have been denied coverage by a medical insurance carrier without accepting material underwriting restrictions or who are unable to obtain

health insurance except at a rate above the ICHIA premium. I.C. § 27–8–10–5.1(a).

A nine-member board of directors manages ICHIA.[1] I.C. § 27–8–10–2.1(b). At its formation, ICHIA was required to submit to the Commissioner a Plan of Operation "necessary or suitable to assure the fair, reasonable, and equitable administration of the association." I.C. § 27–8–10–2.1(c). The Plan and amendments are required to be approved by the Commissioner after notice and hearing, based on a determination that they meet the requirements that they (1) assure the fair and equitable administration of the Association and (2) "provide for the sharing of association losses on an equitable, proportionate basis among the member carriers, health maintenance organizations, limited service health maintenance organizations, and self-insurers." *Id.*

By statute, ICHIA premiums are to be no greater than 150% of the average charged by the five carriers with the largest premium volume in Indiana during the preceding calendar year. I.C. § 27–8–10–2.1(g). Because its rates are subject to this statutory cap and because ICHIA insures high-risk individuals, ICHIA incurs substantial losses every year. *Associated Ins. Cos. v. Ind. Dep't of State Revenue*, 655 N.E.2d 1271, 1272 (Ind. Tax Ct.1995). The statute authorizes ICHIA to assess these losses "to all members in proportion to their respective shares of total health insurance premiums . . . or any other equitable basis as may be provided in the plan of operation." I.C. § 27–8–10–2.1(n). Members are permitted by statute to take a credit for their assessment payments against their liability for premium tax, adjusted gross income tax, and certain other state taxes up to the aggregate of their assessments less any refunds from ICHIA. I.C. § 27–8–10–2.1(n)(1).

ICHIA's current Plan of Operation has been approved by the Commissioner. It provides for an internal appeal procedure for member associations to follow to present any challenge to ICHIA's actions. Specifically, if a member wishes to challenge ICHIA's Plan of Operation or assessment methodology, the member is directed to appeal first to the ICHIA Board of Directors. If the member is unhappy with the Board's decision, or if the Board does not act on the member's complaint within thirty days, the member can appeal to the Commissioner. The Plan provides that a member association may commence suit against ICHIA or the Commissioner only after this appeal procedure is completed.

The plaintiffs in this case are HMOs who allege they are not subject to the relevant state taxes in amounts sufficient to benefit from the credit. Thus, they argue, ICHIA's assessment method allocates a disproportionate share of ICHIA's losses to the HMOs after taking into consideration their tax effect. The plaintiffs brought this lawsuit in Marion Superior Court against ICHIA and the Commissioner seeking a declaratory judgment that ICHIA's assessments of the plaintiffs violate the fair and equitable apportionment requirements of the Indiana Insurance Code. They also contend the assessments denied rights guaranteed under the Due

---

1. Seven members of the Board are appointed by the Commissioner: four of these are representatives of members of ICHIA, one is a representative of an HMO, two represent policyholders and one is a representative of health care providers. The remaining two Board members are the state budget director or her designee and the Commissioner or her designee. The Commissioner, appoints the chairman of the Board. At the time M–Plan filed this claim the Board consisted of seven members including one HMO representative. I.C. § 27–8–10–2.1(b) (1998).

Course of Law and Privileges and Immunities Clauses of the Indiana Constitution, and resulted in an unconstitutional taking of their property without compensation.

The Commissioner and ICHIA moved to dismiss the case for lack of subject matter jurisdiction, arguing that the HMOs failed to exhaust required administrative remedies because they did not appeal to the ICHIA Board of Directors or to the Commissioner before initiating this suit in court. The trial court granted the motion and dismissed the complaint as to both ICHIA and the Commissioner. The Court of Appeals reversed, holding that the HMOs were not required to exhaust administrative remedies before filing their complaint because ICHIA was not a state agency and therefore could not invoke the requirements of the Indiana Administrative Orders and Procedures Act (AOPA) to exhaust administrative remedies before challenging its action. *M–Plan, Inc. v. ICHIA,* 784 N.E.2d 546, 551 (Ind.Ct.App.2003). This Court granted transfer.

## I. Exhaustion of Administrative Remedies

Indiana has viewed failure to exhaust administrative remedies as a matter of subject matter jurisdiction of the trial court. *Austin Lakes Joint Venture v. Avon Utils., Inc.,* 648 N.E.2d 641, 644 (Ind.1995). If the facts before the trial court are undisputed, then an issue of subject matter jurisdiction presents a pure question of law and is reviewed de novo. *GKN Co. v. Magness,* 744 N.E.2d 397, 401 (Ind.2001). That is the case here.

The HMOs contend that the internal dispute resolution procedure set out in ICHIA's Plan of Operation is not the exclusive remedy for a member aggrieved by ICHIA's actions. They further argue that if this procedure is intended to be the exclusive remedy, it cannot be mandatory because it is not statutorily authorized.

The first contention is easily resolved. The Plan provides that:

> Any member aggrieved by an act of the Association shall appeal to the Board of Directors before appealing to the Commissioner of the Indiana Department of Insurance.... If such member is aggrieved by the final action or decision of the Board, or if the Board does not act on such complaint within 30 days, the member may appeal to the Commissioner within 30 days....

The use of "shall" is normally mandatory. *United Rural Elec. Membership Corp. v. Ind. & Mich. Elec. Co.,* 549 N.E.2d 1019, 1022 (Ind.1990). We see no reason to construe the term differently here. The Plan therefore purports to require an appeal to the Board, and permits an appeal to the Commissioner to resolve any dispute between a member and ICHIA. The issue then becomes whether the Commissioner and ICHIA are authorized to adopt and approve a Plan requiring the administrative remedy at issue. If so, the HMOs must exhaust this remedy.

The Court of Appeals reasoned that because ICHIA's motion to dismiss for lack of subject matter jurisdiction was based on failure to exhaust procedures prescribed by ICHIA's Plan of Operation, the central question is whether ICHIA is an agency subject to the Administrative Orders and Procedures Act. *M–Plan, Inc. v. Ind. Comprehensive Health Ins. Ass'n,* 784 N.E.2d 546, 549 (Ind.Ct.App.2003). We agree that ICHIA is not a state agency, at least for most purposes. But we do not agree that this issue controls disposition of this case. Rather, we conclude that the procedures prescribed in the Plan of Operation—appeal to the Board of Directors and then to the Commissioner—are required to be pursued because the plaintiffs are members of ICHIA and thereby bound by validly adopted provisions of the Plan of

Operation, irrespective of the character of ICHIA.

■ First, even if ICHIA is viewed as a private association, exhaustion of internal dispute mechanisms may be required. Courts will rarely interfere with the internal affairs of an association. 3 *Ind. Law Encyclopedia*, Associations, Clubs & Societies § 9, at 263 (1978). Just as a court will not hear a dispute with an administrative agency before the challenger has exhausted available administrative remedies, so may a dispute between an association and one of its members be subject to exhaustion of internal reviews provided by the association. *United States Auto Club, Inc. v. Woodward*, 460 N.E.2d 1255, 1258 (Ind.Ct.App.1984). Private associations enjoy this deference even where membership in the association is involuntary. *See Ind. High Sch. Athletic Ass'n v. Carlberg*, 694 N.E.2d 222, 227 (Ind.1997) (although a student's attendance is not voluntary, because the school is a member of IHSAA, exhaustion of IHSAA remedies is appropriate before bringing suit to challenge an athletics eligibility ruling). Similarly, in states where membership in the state bar association is required of all attorneys, members of those associations must exhaust internal review procedures provided by the association before challenging its acts in court. *See Sullivan v. Alaska Bar Ass'n*, 551 P.2d 531, 534 (Alaska 1976); *In re Chapman*, 128 N.H. 24, 509 A.2d 753, 756 (1986). Just as an attorney who elects to practice law in a state with an integrated bar must become a member of the bar association and abide by the association's internal review procedures, an insurer electing to write health insurance in Indiana must be a member of ICHIA and adhere to ICHIA's rules and procedures.

Apart from any general doctrines requiring exhaustion of internal association remedies, ICHIA is something of a hybrid and has some characteristics of a state agency. ICHIA is authorized by statute to create a Plan of Operation for carrying out the requirements of the statute. I.C. § 27–8–10–2.1(c) (2003). The statute provides that the plan is to be "necessary or suitable" for the fair administration of ICHIA. *Id.* The statute goes on to provide that ICHIA may include any additional provisions in its Plan of Operation that are necessary or proper for fair administration of ICHIA. The statute requires the Commissioner's approval of the Plan before it is effective and the Plan was so approved after notice and a hearing. Upon approval, its status is essentially the same as an administrative regulation. *Id.*

The Indiana Court of Appeals has found a similar statutory structure sufficient to create an administrative remedy that must be exhausted. *Ind. State Dep't of Welfare v. Stagner*, 410 N.E.2d 1348, 1351 (Ind.Ct.App.1980). In that case, a speech and hearing pathologist sued the Indiana Department of Welfare in trial court based on the Department's denial of the pathologist's claim for Medicaid reimbursement. The Department of Welfare argued that the pathologist was required to pursue administrative remedies before going to court and the Indiana Court of Appeals agreed. *Id.* The court pointed out that it is true that the exhaustion doctrine assumes an available statutory remedy at the time judicial relief is sought, but explained that a remedy did exist because the legislature gave the Department of Welfare the authority to promulgate rules and regulations to deny payment to any provider for claims made for services or materials determined not medically reasonable and necessary. The Department, pursuant to this delegated authority, established standards for the denial of reimbursement claims and provided a procedure for ap-

peals from claim denial within the Department. *Id.*

Here we are faced with a similar situation to that in *Stagner.* By directing ICHIA to create a plan of operation necessary or proper to fulfill the goals of the statute, the ICHIA statute gives ICHIA and the Commissioner broad authority. Pursuant to this authority ICHIA and ultimately the Commissioner decided that an ICHIA member aggrieved by an ICHIA action is to raise the matter first with the Board, then with the Commissioner. Therefore, ICHIA and the Commissioner have provided an administrative remedy pursuant to their statutory authority that the HMOs must pursue. This process does not foreclose judicial review. Whatever ICHIA's status, the Commissioner is plainly a state agency. As such, her decisions are subject to review under AOPA. I.C. § 4–21.5–5–3 (those who have standing to obtain judicial review of an agency action).

The Plan's provision for internal dispute resolution in the first instance is grounded in sound policy. This Court has often addressed the value of completing administrative proceedings before resorting to suit in trial court. *See, e.g., Ind. Dep't Envtl. Mgmt. v. Twin Eagle, L.L.C.,* 798 N.E.2d 839, 844 (Ind.2003). If administrative remedies are utilized, "(1) premature litigation may be avoided; (2) an adequate record for judicial review may be compiled; and (3) agencies retain the opportunity and autonomy to correct their own errors." *Id.* The reasons for requiring exhaustion of administrative remedies apply in full force in this case. ICHIA and the Commissioner are charged with the very technical duties of administering the ICHIA statute. This is a task for which ICHIA and ultimately the Commissioner are particularly suited. In addition, because of the nature and membership of ICHIA, any decision made as to the liabilities of the plaintiffs in this case will affect the liabilities of all other members. As a practical matter, requiring resort first to the Board and then to the Commissioner may avoid, by negotiation, issues raised by a complex formula that necessarily works from time to time to the advantage or disadvantage of individual members. For these reasons, it is appropriate for ICHIA and the Commissioner to adopt a Plan that requires ICHIA's members to pursue internal appeal procedures and seek resolution by the Commissioner and once an administrative remedy is put in place, it is required to be exclusive whether or not a statute or regulation explicitly requires exhaustion. *Austin Lakes,* 648 N.E.2d at 644.

In sum, whether ICHIA is viewed as a private association or a state agency, exhaustion of its internal remedies is required before a member may resort to litigation to challenge an assessment.

## II. Exceptions to the Exhaustion Requirement

The HMOs argue that even if the doctrine of exhaustion of administrative remedies applies to ICHIA's Plan of Operation, exceptions to that doctrine excuse exhaustion in this case.

### A. *Futility*

■■■■■ The HMOs argue that they need not exhaust their administrative remedies because exhaustion would be futile. Exhaustion of administrative remedies may be excused if the exercise would be futile. *Town Council of New Harmony v. Parker,* 726 N.E.2d 1217, 1224 (Ind.2000). However, "the exhaustion requirement . . . should not be dispensed with lightly on grounds of 'futility.'" *Id.* The HMOs' argument as to futility is based on the affidavit of the president of M–Plan in which he reports conversations he had with the president of ICHIA and the Commissioner

of Insurance and says the Commissioner did not demand that the HMOs pursue administrative appeal and told him that legal action may be the only option for the HMOs. Even if accepted at face value, this conversation does not rise to the status of an act of the Department of Insurance. The HMOs were aware of the administrative remedy in the plan of operation and do not claim lack of notice of the procedure. To prevail upon a claim of futility, "one must show that the administrative agency was powerless to effect a remedy or that it would have been impossible or fruitless and of no value under the circumstances." *Smith v. State Lottery Comm'n,* 701 N.E.2d 926, 931 (Ind.Ct.App.1998) (quoting *Ind. State Bldg. and Constr. Trades Council v. Warsaw Cmty. Sch. Corp.,* 493 N.E.2d 800, 806 (Ind.Ct.App. 1986)). The HMOs have not suggested that either ICHIA or the Commissioner is powerless to effect a remedy. Even if the HMOs are unsuccessful in an administrative challenge, resort to the Commissioner may produce a reasoned explanation of the considerations going into adoption and approval of this allocation of costs of a statutorily mandated program. That in itself is of value before resort to the courts to resolve such an issue. *Turner v. City of Evansville,* 740 N.E.2d 860, 862 (Ind.2001) (one of the benefits of exhaustion of administrative remedies is that a record for judicial review may be created).

### B. *Invalidity of an Administrative Rule*

The HMOs contend exhaustion of administrative remedies is not required because the challenged assessment methodology is both unauthorized and unconstitutional. Citing *Indiana Department of Insurance v. Golden Rule Insurance Co.,* 639 N.E.2d 339, 342 (Ind.Ct.App.1994), the HMOs assert that when an administrative rule is chal-

lenged as facially invalid, administrative remedies are not required. The HMOs challenge the application of ICHIA Plan of Operation to them, not the fundamental issue of ICHIA's power to make such allocations. Different members of ICHIA are affected in different ways by ICHIA's assessment method. The HMOs essentially argue that ICHIA's methods, in concert with taxation of HMOs, is unfair to HMOs. ICHIA responds that taxation of HMOs is essentially a function of the HMOs' election to do business in that form. These questions are specific to the HMOs' situation and can best be resolved by the agency in the first instance.

### C. *Refusal to Act as Required by Law*

The HMOs argue that they are relieved from the exhaustion requirement by the agency's failure to act on their petition. The HMOs cite *MHC Surgical Center Associates, Inc. v. State Office of Medicaid Policy and Planning,* 699 N.E.2d 306, 309 (Ind.Ct.App.1998), for this proposition. In that case, the court held that the plaintiffs were not required to exhaust administrative remedies because the agency had not taken action on the petitioner's claims in over four years. *Id.* No such delay is asserted here. Nor have the HMOs shown that ICHIA has otherwise deliberately refused to follow the law.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., DICKSON, SULLIVAN, and RUCKER, JJ., concur.